UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARY LEE WILLIAMS,

      Plaintiff,

v.                                                            Case No:   2:13-cv-315-FtM-38CM

VICKIE LANGFORD, CHUCK
SEXTON, DONALD A. LEAVINS and
BERNARD MOUNT,

      Defendants.

_____/

## OPINION AND ORDER[1]

This matter comes before the Court upon review of the following:

> Plaintiff's Motion for Summary Judgment (Doc. 97, filed August 13, 2015);

> Plaintiff's Brief in Support of his Motion for Summary Judgment (Doc. 99, filed August 13, 2015);

> Defendants' Request for Judicial Notice (Doc. 104, filed September 17, 2015);

> Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 105, filed September 18, 2015);

> Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 109, filed October 2, 2015);

---

[1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Defendants' Motion for Summary Judgment (Doc. 107, filed September 30, 2015); and

Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 112, filed November 2, 2015).

As discussed below, the Court concludes that each defendant is entitled to summary judgment as a matter of law on Plaintiff's claims.   Plaintiff's motion for summary judgment is denied.

## I.    Procedural History

Plaintiff initiated this action on April 22, 2013 by filing a civil rights complaint against Defendants Librarian William Baysah, Public Defender Robert Kalter, Warden Vickie Langford, Colonel Donald Leavins, Assistant Warden Bernard Mount, and Assistant Warden Chuck Sexton (Doc. 1).   A frivolity review was conducted on the complaint, and Defendant Kalter was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) (Doc. 27). Plaintiff filed an amended complaint on January 17, 2014 and a second amended complaint on May 30, 2014 (Doc. 29; Doc. 71).

Defendants filed a motion to dismiss Plaintiff's second amended complaint (Doc. 72).   The Court dismissed Plaintiff's claims for compensatory and punitive damages pursuant to 28 U.S.C. § 1997e(e) because Plaintiff had alleged no physical injury resulting from Defendants' allegedly unconstitutional actions (Doc. 77).   Baysah was dismissed as a defendant pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. *Id.* at 13. Plaintiff was allowed to seek nominal damages on his retaliation and interference with access to the court claims. *Id.*

## II.    Complaint

The facts giving rise to Plaintiff's second amended complaint stem from a search for contraband that took place at Hendry Correctional Institution's law library on June 25,

2010.   Plaintiff alleges that Defendant Leavins entered the library and threw "large volumes of boxes containing legal documents into trash bends [sic]." Doc. 71 at ¶ 4. Three days later, Plaintiff reported to his work station and discovered "that all his legal documents, transcripts, records, letters, briefs from his desk were gone." *Id.* at ¶ 7.   The filing cabinets in which Plaintiff kept his legal documents were also gone. *Id.* at ¶ 8.

On June 28, 2010, Defendants Langford, Leavins, Mount, and Sexton entered the law library, and Plaintiff "made a verbal complaint to Defendant Langford about the destruction of his legal documents." (Doc. 71 at ¶ 12).   Defendant Mount told Plaintiff that Defendant Leavins threw away nothing that had been properly stored. *Id.* at ¶ 13.

On June 30, 2010, Plaintiff approached Defendants Langford, Mount, and Sexton again to ask about the destruction of his legal material (Doc. 71 at ¶ 14).   Defendant Sexton told Plaintiff that the material had not been properly stored. *Id.* at ¶ 15.   Defendant Langford told Plaintiff that Librarian Baysah had authorized the destruction, but upon inquiry, Baysah denied the allegation. *Id.* at ¶ 16-17.   Baysah said that Defendants Langford, Sexton, and Mount had ordered Defendant Leavins to search the library and confiscate legal material. *Id.* at ¶¶ 17-19, 22-24.

In June of 2010, Plaintiff's family hired an attorney to raise a belated jury instruction claim in Plaintiff's state criminal case (Doc. 71 at ¶ 33).   Plaintiff could not raise his "meritorious claim" adequately "because of the legal material that was destroyed by Defendants in this cause." *Id.* at ¶ 42.   "[W]ithout ever touching on the merits of [Plaintiff's] constitutional claims, the [state] court has decided to ban [Plaintiff] from any more filing with court in violation of [Plaintiff's] equal protection rights." *Id.* at ¶ 8.

On April 8, 2011, Defendant Leavins retaliated against Plaintiff for filing grievances about the alleged destruction by locking him in administrative confinement (Doc. 71 at ¶

- 3 -

48).   Thereafter, Defendant Leavins entered Plaintiff's cell and confiscated all copies of the grievances he had filed in regards to the destruction of his legal material. *Id.* at ¶ 49. On April 13, 2011, Defendant Langford transferred Plaintiff from Hendry Correctional Institution to South Florida Reception Center. *Id* at ¶ 51.

Plaintiff's First Amendment interference with access to the courts ("interference") claim against Defendants Leavins, Langford, Mount, and Sexton and retaliation claim against Defendant Leavins are presently before the Court.

## III.   **Motions for Summary Judgment**

Plaintiff has labeled his motion for summary judgment as a "Statement of Undisputed Facts." (Doc. 97).   However, the motion merely restates the allegations in the second amended complaint, and states as "undisputed facts" assertions that are disputed.   In support of his motion, Plaintiff attaches the following: (1) declaration of Charles Fleming; (2) declaration of Dallas Y. Goodloe; (3) declaration of Troy Swint; (4) declaration of James Parham; (5) declaration of Noel Reid; (6) declaration of Jonathon R. Major; (7) declaration of Borden Alford; (8) declaration of Charles H. Wright; (8) Plaintiff's June 28, 2010 informal grievance; (9) Defendant Mount's response to the informal grievance; (10) Plaintiff's formal grievance to Defendant Langford; and (11) Defendant Langford's response to the formal grievance (Doc. 97-1; Doc. 97-2; Doc. 97-3; Doc. 97-4; Doc. 97-5; Doc. 97-6; Doc. 97-7; Doc. 97-8; Doc. 97-9; Doc. 97-10; Doc. 97-11).

In response to Plaintiff's motion for summary judgment, Defendants filed a request for judicial notice in which they attach the docket sheet of Plaintiff's underlying state-court criminal case and copies of five state-court orders denying Plaintiff's motions for post-conviction relief (Doc. 104).   Defendants also note that the affidavits submitted by

Plaintiff in support of his motion for summary judgment are unsworn and argue that "Plaintiff has alleged no facts which show, without dispute, that the Defendants acted outside of their discretionary authority to maintain order in the library." (Doc. 105 at 2-3, 5). Defendants urge that "Plaintiff's Motion appears to be seeking damages without limitation" even though Plaintiff's damages have been limited to nominal damages of one dollar. *Id.* at 6. Defendants also assert that Plaintiff did not exhaust his administrative remedies as to any claim except for the claim involving Defendant Leavins' alleged removal of his legal materials from the library. *Id.* at 8-9. In support of their response, Defendants attach Defendant Leavins' Answers to Plaintiff's Interrogatories (Doc. 105-1); Defendant Langford's Answers to Plaintiff's Interrogatories (Doc. 105-2); Defendant Leavins' Affidavit (Doc. 105-3); and Defendant Langford's Affidavit (Doc. 105-4).

In Defendants' Motion for Summary Judgment (Doc. 107), they argue that: (1) there is no record evidence to support Plaintiff's allegation that Defendant Leavins ordered the search team to throw away Plaintiff's legal material without justification; (2) there is no record evidence to demonstrate that the Plaintiff had properly stored his legal material in accordance with FDOC procedures; (3) there is no record evidence to demonstrate the intentional disposal of any legal documents; (4) Plaintiff failed to demonstrate the frustration of any legal claim of his which had arguable merit; (5) Defendants are entitled to qualified immunity; (6) Defendants are entitled to Eleventh Amendment immunity; (7) Plaintiff's claims for compensatory and punitive damages are barred pursuant to U.S.C. § 1997e(e); and (8) Plaintiff failed to exhaust his administrative remedies (Doc. 107 at 2-3). In support of their motion , Defendants reference: the Affidavit of Defendant Langford (Doc. 105-4); Form DC5-153 (Doc. 105-4); the Affidavit of Donald Leavins (Doc. 105-3); the Affidavit of Ben Mount (Doc. 107-2); Plaintiff's

Informal Grievance and Response (Doc. 97-9); Plaintiff's Formal Grievance and Response (Doc. 97-11); the docket sheet and two orders from Plaintiff's underlying criminal case (Doc. 104-2); Defendants' Request for Judicial Notice (Doc. 104); and Plaintiff's Grievance Appeal (Doc. 74-1).

## IV.   **Legal Standards**

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof.   Celotex, 477 U.S. at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, (1986).

## V.   Analysis

### A.   Plaintiff did not completely exhaust all of his claims

Title 42, U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*   When a grievance procedure is provided for prisoners, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a federal lawsuit. *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005).

Upon initial review of Plaintiff's first complaint, the Court noted that although Plaintiff asserted that he had exhausted his administrative remedies pursuant to Florida Administrative Code Chapter 33-103, he directed the Court to pleadings filed in Case No. 2:11-cv-236-FtM-36DNF as evidence of exhaustion (Doc. 1 at 5)   The Court advised Plaintiff that "[a]sking the Court to comb through pleadings in unrelated cases in order to verify exhaustion of the claims raised in [the instant] complaint is inappropriate." (Doc. 15, filed June 27, 2013).   Plaintiff was ordered to submit all required grievances, appeals, and responses to the Court to verify that his claims were exhausted. *Id.*   In response, Plaintiff argued that all grievances had been confiscated by the defendants and destroyed (Doc. 20 at 2).   Plaintiff urged that the state had access to the grievances and asked the Court to issue a subpoena for their production. *Id.*   The Court excused Plaintiff from producing the grievances at that time, but explained that "[s]hould the defendants raise [failure to exhaust as an affirmative defense], Plaintiff may file a new motion for an order

from this Court that the grievance coordinator produce copies of his grievances." (Doc. 21 at 2).

In answer to Plaintiff's second amended complaint, Defendants raised Plaintiff's failure to exhaust his administrative remedies as their Sixth Affirmative Defense (Doc. 79 at 3-4). Even so, Plaintiff did not seek an order from the Court for the grievance coordinator to produce the grievances. Instead, Plaintiff argued in response to Defendants' answer that he was no longer required to produce any evidence of exhaustion because Defendants had waived an exhaustion defense by failing to raise it in their motion to dismiss (Doc. 84 at 6). Defendants raised the issue of Plaintiff's failure to exhaust again in their motion for summary judgment, arguing that Plaintiff exhausted his administrative remedies only as to Defendant Leavins' removal of Plaintiff's legal work from the prison library (Doc. 107 at 21).

Plaintiff has cited no authority for the proposition that an exhaustion defense is waived if not presented in a motion to dismiss. Indeed, the Eleventh Circuit has stated that the exhaustion defense "is not ordinarily the proper subject for summary judgment; instead it should be raised in a motion to dismiss, **or be treated as such if raised in a motion for summary judgment**." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (internal quotations omitted) (emphasis added). Under this authority, when deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make

specific findings to resolve the disputed factual issues related to exhaustion. *Id.* (citing *Bryant*, 530 F.3d at 1373–74, 1376).   The defendant bears the burden of proof during this second step. *Id.*

### 1.    Plaintiff did not exhaust his retaliation claims against Defendant Leavins

In this case, the parties' exhaustion argument (on both the retaliation and interference claims) can be resolved at step one of the inquiry explained above.   Notably, Plaintiff's and Defendants' versions of the facts relating to exhaustion are not in conflict. Plaintiff asserts that "[o]n or about April 8, 2011, Defendant Leavins retaliated against Plaintiff by locking him in administrative confinement for the filing of grievance regard [sic] his legal work." (Doc. 71 at 8).     Plaintiff does not claim to have filed any grievances in relation to the alleged retaliation.   Rather, he asserts that he could not produce the grievances regarding his *interference* claims because Defendant Leavins "confiscated all the provided copies of grievances **in regards to the destruction of his legal material**. Nevertheless, the exhausted copies of said grievances should be on file with the Department of Correction, pertaining to the June 25, 2010 incident in the prison law library, which the Department of Corrections should be placed with the burden of producing which they have denied Plaintiff." (Doc. 71 at 9) (emphasis added). Accordingly, as to Plaintiff's retaliation claims, which are unrelated to the claims concerning the destruction of Plaintiff's legal material, there is no conflict in the record regarding exhaustion.

Even accepting Plaintiff's facts as true, Defendants are entitled to dismissal of Plaintiff's retaliation claims due to Plaintiff's failure to exhaust his administrative

remedies.[2] *Turner*, 541 F.3d at 1082.

### 2.    Plaintiff exhausted his interference claims against all Defendants

Likewise, Defendants do not dispute that Plaintiff filed grievances pertaining to the June 25, 2010 incident that resulted in the destruction of Plaintiff's legal material.[3] However, Defendants do argue that "Plaintiff appears to have exhausted his administrative remedies only as to **Colonel Leavins'** removal of legal work in the law library (Doc. 107 at 21) (emphasis added).   Specifically, Defendants urge that Plaintiff's failure to specifically name Defendants Langford, Mount, or Sexton in the grievances indicates that his access to the court claims against these defendants are unexhausted (Doc. 107 at 21-22).   The Court does not agree.   The United States Supreme Court has stated that "[t]he PLRA requires exhaustion of such administrative remedies as are available, but nothing in [42 U.S.C. § 1997e(a)] imposes a 'name all defendants'

---

[2] Because this claim is dismissed as unexhausted, the Court will not address any of the other arguments raised by Defendants in regards to Plaintiff's retaliation claim.

[3] In his second amended complaint, Plaintiff asserted that he filed both informal and formal grievances related to the destruction of his legal material (Doc. 71 at ¶¶ 9, 11, 28). Plaintiff attached to his motion for summary judgment the informal and formal grievances filed in regards to Defendant Leavins' search of the library and ensuing destruction of his legal documents (Doc. 97-9; Doc. 97-10).   In Plaintiff's informal grievance, he stated that "this complaint pertains to the removal and destruction of my active legal documents from my assigned work area by Col. Leavins." (Doc. 97-9 at 2). In response, Defendant Mount noted that Plaintiff did not have a Form DC5-153 on file authorizing him (Plaintiff) to store his legal papers in the library. *Id.* at 3.   In his formal grievance, Plaintiff insisted that he did have a Form DC5-153 which authorized him to store his material, but even if he did not, prison rules foreclosed the destruction of his legal materials without due process (Doc. 97-10 at 3).   In response, Defendant Langford re-stated that Plaintiff did not have a DC5-153 on file and denied the grievance. *Id.* at 4. Finally, the Florida Department of Corrections denied Plaintiff's appeal in a written letter stating that "[n]o inmate's personal property or legal work was confiscated or disposed of during this comprehensive search. You have not identified missing property with specificity." (Doc. 107 at 21).

requirement[.]"⁴ *Jones v. Bock*, 549 U.S. 199, 217 (2007).   Under *Jones*, Plaintiff's claims regarding the library search and the resulting destruction of Plaintiff's legal materials were exhausted as to all defendants, even those not specifically named in the grievances.

### B.    Plaintiff cannot show an actual injury from the destruction of his legal materials

Plaintiff argues that the destruction of his legal materials interfered with his right of access to the courts (Doc. 71 at 8).   Prisoners have a fundamental right of access to the courts under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977).   However, even the intentional destruction of legal material by prison officials does not, standing alone, establish a constitutional interference claim.   The United States Supreme Court has established that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury to a non-frivolous claim as a result of the defendants' alleged interference. *Lewis*, 518 U.S. at 349; *see also Bass v.* Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998).   An "actual injury" does not occur "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers*, 238 F.3d 423 (6th Cir. 2000) (citing *Lewis*, 518 U.S. at 354-56).   In other words, an inmate who claims that his access to the courts was interfered with fails to state a claim unless he shows prejudice to his litigation.

In their motion for summary judgment, Defendants strenuously argue that they are not liable for the destruction of Plaintiff's legal papers because the papers were improperly

---

⁴ Nor does a review of F.A.C. § 33.103.005 support a conclusion that the grievance process is improperly invoked merely because an individual later named as a defendant was not specifically named in this step of the grievance process.

stored (Doc. 107 at 5).   Defendants also argue that, "even if Plaintiff were able to show

a valid DC5-153 form authorizing him to retain his legal materials in the library, which he

has never made part of the evidence in this case, his 1988 case clearly lacks merit[.]"

(Doc. 107 at 12-13).   In support of their assertion, Defendants point to numerous post-

conviction pleadings from Plaintiff's state-court criminal conviction, all of which were

denied (Doc. 104-1; Doc. 104-2).   Defendants also note that Plaintiff has been barred

from filing additional *pro se* pleadings in state court regarding his conviction (Doc. 104-2

at 7).[5]

     In response, Plaintiff argues that his filing bar in state court is irrelevant because it

refers to *pro se* pleadings and occurred three years <u>after </u>the facts giving rise to this case.

He notes that his frustrated legal claim was filed by counsel on June 30, 2010, only five

days after his legal materials were destroyed by Defendant Leavins (Doc. 112 at 16).[6]

---

     [5] In 1990, Plaintiff was convicted of first-degree murder and unlawful possession of a firearm while engaged in a criminal offense (Doc. 113-16 at 3).   He was sentenced to life in prison for the first degree murder conviction. *Id.*   Florida's Third District Court of Appeal affirmed the convictions and sentences on direct appeal. *Williams v. State*, 591 So. 2d 319 (Fla. 3d DCA 1991).

     In its August 21, 2013 order barring Plaintiff from filing additional *pro se* post-conviction pleadings, Florida's Third District Court of Appeal listed seventeen post-conviction motions that have been filed by Plaintiff and rejected by the state courts (Doc. 113-16 at 4).   The court noted that Plaintiff "argues his appellate counsel was ineffective for failing to discover fundamental error in instructing the jury on manslaughter without [] defining the terms excusable or justifiable homicide." *Id.* (internal quotations omitted). The court further noted that "[a]fter careful review of the exhaustive filings by Williams, and after thorough review of the case law, we disagree with Williams' view that this latest proceeding is not frivolous.   In fact, of the multiple cases Williams has filed with this court, none have been found to be meritorious." *Id.* at 5.

     [6] It does not appear from the docket of Plaintiff's underlying criminal case that anything was filed in state court on or near June 30, 2010 (Doc. 104-1).   Indeed, it appears that nothing was filed between November 9, 2009 and August 10, 2010. *Id.* However, Defendants do not suggest that the petition was not filed, so for the purpose of this Order, the Court will assume that the petition was filed in the Third District Court of

Plaintiff attaches a copy of a brief entitled "Belated Petition for Writ of Habeas Corpus Based Upon Ineffective Assistance of Appellate Counsel" signed by attorney Clayton R. Kaeiser on June 30, 2010 (Doc. 113-11 at 2-18).   The brief does not mention the destroyed legal materials – even though Plaintiff alleges that the brief was filed *after* his legal papers were destroyed.   To the contrary, the motion recognizes that the deadline for filing a petition alleging ineffective assistance of counsel had "long since expired" but urges that "Petitioner was affirmatively misled about the results of his direct appeal by appellate counsel" and that the petition therefore fell within the exception to the two-year deadline for filing such a petition (Doc. 113-11 at 3).   Plaintiff also provides a June 21, 2010 notarized affidavit that he allegedly attached to the motion.   In the affidavit, Plaintiff attested that:

- on February 26, 1990, he was found guilty of first degree murder and possession of a firearm during the commission of a felony and sentenced to life in prison;

- his court appointed appellate attorney raised two issues on direct appeal;

- on December 31, 1991, the Third District Court of Appeal *per curiam* affirmed his conviction and sentence; and

- Plaintiff's appellate attorney informed Plaintiff by telephone and letter that his conviction and sentence were affirmed and that he did not believe he could seek further relief on Plaintiff's behalf.

(Doc. 113-10).   Plaintiff now argues that he waited almost twenty years to raise the claims set forth in his belated petition because he was "affirmatively misled about the results of his direct appeal," and that two similar cases in the early 1990's were reversed

---

Appeal where it was denied.

due to a jury instruction error that appellate counsel failed to raise (Doc. 112 at 14) (citing *Kitchen v. State*, 592 So. 2d 773 (Fla. 3d DCA 1992) and *Peters v. State*, 598 So. 2d 199 (Fla. 3d DCA 1992)).[7]   Plaintiff appears to believe that his appellate counsel should have made similar arguments as were successfully raised in *Kitchen* and *Peters* and that counsel's failure to do so excuses the two-decade delay between Plaintiff's conviction and his petition.   However, Plaintiff misunderstands the Florida rules on untimely state habeas petitions based on the ineffective assistance of appellate counsel.

Prior to 1997, a claim alleging ineffective assistance of appellate counsel was raised by way of a petition for writ of habeas corpus, and there was no specific time limitation to raise this claim. *See Rogers v. Singletary*, 698 So.2d 1178, 1179 (Fla. 1996). However, the time to bring a claim was not unlimited because the doctrine of laches could bar a habeas corpus petition claiming ineffective assistance of appellate counsel. *See McCray v. State*, 699 So.2d 1366, 1368 (Fla. 1997).   In *McCray*, the Florida supreme court concluded that any habeas corpus petition is presumed to be the result of an unreasonable delay and prejudicial to the State if the petition was filed more than five years from the date the petitioner's conviction became final. *Id.*   The presumption could only be overcome if the petitioner made specific factual allegations under oath that he or she was affirmatively misled by counsel about the results of the appeal. *Id.*   As of January 1, 1997, the time limits on bringing claims of ineffective assistance of appellate counsel are governed by the rules of appellate procedure which require that habeas petitions be filed within two years after the judgment and sentence become final on direct review

---

[7] In these cases, the defendants' convictions were reversed for a new trial because the trial court had committed fundamental error in instructing the jury on manslaughter without defining justifiable and excusable homicide.

unless the petition "alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel." *See* Fla. R. App. P. 9.141(d)(5); *McCray*, 699 So.2d at 1367–68.

Although Plaintiff argues that he was "affirmatively misled" by appellate counsel – presumably because he believes he received bad advice when counsel informed him that nothing else could be done – Plaintiff's own sworn affidavit shows that he was not affirmatively misled about the ***results*** of the appeal.   To the contrary, Plaintiff attests that counsel informed him by both telephone and letter that the Third District Court of Appeal affirmed his conviction and sentence and provided him with a copy of the decision (Doc. 113-10 at 3).   Given that Plaintiff was not affirmatively misled by appellate counsel about the results of his direct appeal, and given that Plaintiff waited almost twenty years to file his state petition alleging ineffective assistance of appellate counsel, Plaintiff's state petition for writ of habeas corpus was untimely under both *McCray* and Fla. R. App. P. Rule 9.141(d)(5).   Defendants' destruction of Plaintiff's legal materials did not change this fact. *See Partridge v. Moore*, 768 So. 2d 1128, 1129 (Fla. 1st DCA 2000) (complaints regarding appellate counsel's "bad advice" does not equate to being "affirmatively misled about the results of the appeal by counsel."); *Hurtado v. Singletary*, 708 So. 2d 974 (Fla. 3d DCA 1998) (eight year delay in filing motion for belated appeal after learning of the decision unreasonable).

The records and pleadings before this Court conclusively show that Defendants' destruction of Plaintiff's legal materials did not impede his efforts to pursue a non-frivolous legal claim.   Accordingly, Plaintiff has not shown an actual injury from the destruction of his legal materials, and Defendants are entitled to summary judgment on Plaintiff's interference claims as a matter of law. *See Lewis*, 518 U.S. at 352-54; Fed. R. Civ. P.

56(a).[8]

VI.    **Conclusion**

In accordance with the foregoing, it is hereby **ORDERED:**

1.      Defendants' Motion for Summary Judgment (Doc. 107) is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment (Doc. 97) is **DENIED**.

3.      With no remaining defendants or claims, the **Clerk of Court** is directed to

terminate any pending motions, close this case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on this 10th day of December, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Gary Lee Williams
Counsel of Record

---

[8] Because the Court concludes that Plaintiff failed to establish the actual injury required for standing to assert an interference claim, it will not address Defendants' other arguments and defenses related to this claim.